UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TYLER MAXWELL,

    Plaintiff,

v.                                                    Case No. 6:20-cv-1954-Orl-37GJK

SCHOOL DISTRICT OF VOLUSIA
COUNTY; SCHOOL BOARD OF
VOLUSIA COUNTY; IDA WRIGHT;
LINDA CUTHBERT; CARL PERSIS;
RUBEN COLON; JAMIE HAYNES;
CARMEN BALGOBIN; ALAN P.
CANETTI; and TODD J. SPARGER,

    Defendants.

## ORDER

Plaintiff moves for a temporary restraining order, alleging a violation of his First Amendment right. (Doc. 3 ("**Motion**").) On review, the Motion is granted.

### I. BACKGROUND

Plaintiff Tyler Maxwell ("**Tyler**") is an unabashed, enthusiastic supporter of the incumbent president. (Doc. 1, ¶¶ 1, 19, 20.) He is also an eighteen-year-old senior at Spruce Creek High School ("**School**") in Port Orange, Florida. (*Id.* ¶ 6.) To park in the lot adjacent to the School, Tyler paid $55 for a School parking decal. (*Id.* ¶ 18.) On September 14, 2020, he drove his pickup truck to School, but this time with a new passenger in the truck bed—a red, white, and blue elephant statue with "TRUMP" emblazoned on its side. (*Id.* ¶¶ 20–22.)

-1-



Defendant Alan P. Cannetti ("**Cannetti**"), the School's Assistant Principal, told Tyler to take the elephant home and return without it. (*Id.* ¶ 24.)

Tyler's father ("**Dad**") asked for a written explanation—but neither Cannetti nor the School Board provided one. (*Id.* ¶ 25.) Defendant Todd J. Sparger ("**Sparger**"), the Principal, warned Dad that if Tyler returned to School with the elephant, Sparger would revoke his parking decal. (*Id.* ¶ 28.) Again, Dad asked for a written explanation—again, Sparger did not provide one. (*Id.* ¶¶ 26, 28.)

Undaunted, Tyler returned to school the next day with the elephant in his truck. (*Id.* ¶ 29.) But Sparger intercepted him before he entered the school grounds and demanded surrender of the parking decal. (*Id.* ¶¶ 30, 31.) Tyler complied. (*Id.* ¶ 32.) Sparger told Tyler he couldn't park at the School. (*Id.* ¶ 31.) Sparger then emailed Dad:

> As soon as Tyler's vehicle is in compliance with this policy (structure removed from back of truck), we would be happy to consider reinstating his driving privileges. Until then, his driving privileges are revoked.

(*Id.* ¶ 35.) Tyler, voting in his first presidential election, does not want to remove the

elephant—an expression of his support for the reelection of President Donald Trump and an encouragement for others to vote. (*Id.* ¶¶ 19, 20, 36.) Tyler's elephant, while perhaps obnoxious to some, didn't disrupt school activities. (*Id.* ¶ 43.) And the School allows students to engage in other forms of political expression, including on their vehicles—such as bumper stickers for other candidates and causes. (*Id.* ¶ 46.)

Tyler's attorney wrote to Sparger, the Superintendent of Schools, and other School District Officials objecting to the revocation of Tyler's parking decal. (Doc. 1-1.) The School responded, stating School Board Policy 805 "reasonably regulates political activities in time, place, and manner of use while on School Board property" so the prohibition of Tyler's elephant does not violate Tyler's constitutional rights. (Doc. 1-2.) Policy 805 prohibits "political posters, signs, banners, or any other writing which promotes a political issue, cause, position, or candidate" that is "permanently posted in or on school board property." (Doc. 1-3, p. 2.) The School concluded, Tyler's "political activity . . . occurred on school grounds, during school hours, and appears to give the imprimatur of public endorsement of partisan political positions or a particular candidate" in violation of Policy 805. (Doc. 1-2, p. 3.)

Unpersuaded, Tyler sued for a violation of his First and Fourteenth Amendment right to free speech. (Doc. 1.) He also moves for a temporary restraining order ("**TRO**") enjoining the School from prohibiting him from parking his truck, complete with elephant, in the School's parking lot. (Doc. 3.)

## II.   LEGAL STANDARDS

The Court may issue a TRO in limited circumstances. *See* Fed. R. Civ. P. 65(b)(1);

Local Rule 4.05(a). The Court may grant such relief only if:

> (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" Fed. R. Civ. P. 65(b)(1)(A);
>
> (2) the movant "certifies in writing any efforts made to give notice and the reasons why [notice] should not be required" Fed. R. Civ. P. 65(b)(1)(B); and
>
> (3) the movant "gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" Fed. R. Civ. P. 65(c).

To prevail, the moving party must establish: (1) a likelihood of success on the merits; (2) irreparable injury without the requested relief; (3) threatened injury outweighs any harm to the non-moving party; and (4) relief would serve the public interest. *Shiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). If issued, the TRO must "state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2).

### III.   ANALYSIS

Tyler satisfied the procedural requirements of Rule 65 and Local Rule 4.05. He filed a verified complaint and counsel certified he will immediately serve the Motion upon Defendants, but notice should not be required because of the time-sensitive nature of this case, with the upcoming election. (Doc. 1; Doc. 3, p. 2); Fed. R. Civ. P. 65(b)(1); Local Rule 4.05. Now let's turn to the substantive requirements for a TRO.

The First Amendment, as applied to the States by the Fourteenth Amendment, prohibits Congress and the States from "abridging the freedom of speech." U.S. Const.

amends. I & XIV. Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cnty. Sch. Dist.*, 393 U.S. 503, 506 (1969). And "First Amendment rights extend beyond the classroom: 'When he is in the cafeteria or on the playing field or on the campus during the authorized hours, he may express his opinions, even on controversial subjects.'" *Barber ex rel. Barber v. Dearborn Pub. Schs.*, 286 F. Supp. 2d 847, 852 (E.D. Mich. 2003) (quoting *Tinker*, 393 U.S. at 512–13).

In the First Amendment school context,[1] there are four categories of expression: "vulgar expression, pure student expression, government expression, and school sponsored expression." *Bannon v. Sch. Dist. of Palm Beach Cnty.*, 387 F.3d 1208, 1213 (11th Cir. 2004). Vulgar expression is "lewd, offensive, or indecent, and schools may freely curtail it." *Id.* Pure student expression is "expression that merely happens to occur on the school premises, and schools must tolerate such expression unless they can reasonably forecast that the expression will lead to 'substantial disruption of or material interference with school activities.'" *Id.* (quoting *Tinker*, 393 U.S. at 514). Government expression is "delivered directly through the government" and is subject to the government's "subject-matter-based choices." *Id.* And last, school sponsored expression occurs when "students, parents, and members of the public might reasonably perceive students' expressive

---

[1] Generally, "schools are considered nonpublic forums unless school officials intentionally open their doors to the public at large." *Gilio ex rel. J.G. v. School Bd. of Hillsborough Cnty., Fla.*, 905 F. Supp. 2d 1262, 1271 (M.D. Fla. 2012) (cleaned up). The School property is a scholastic nonpublic forum. *See Bannon v. Sch. Dist. of Palm Beach Cnty.*, 387 F.3d 1208, 1213 (11th Cir. 2004).

activities to bear the imprimatur of the school." *Id.* (cleaned up). Schools may censor such expression for a legitimate pedagogical concern. *Id.* at 1213–14.

Tyler's elephant, placed in the bed of his truck parked on school grounds, is pure student expression. *See Thomas et al. v. Varnado*, No. 20-2425, 2020 WL 5993156, at *3 (E.D. La. Oct. 9, 2020). The School's response contends the elephant is school sponsored expression, stating it gives the "imprimatur of public endorsement" and cites two school sponsored expression cases.[2] (Doc. 1-2, p. 3 (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) and *Bannon v. Sch. Dist. of Palm Beach Cnty.*, 387 F.3d 1208 (11th Cir. 2004).) But it would not be reasonable for the public to believe an elephant endorsing a presidential candidate, clearly placed in an individual student's car, parked in the school parking lot where mostly students park, represents the School's view. (Doc. 1, ¶ 18); *see Varnado*, 2020 WL 5993156, at *1, 3; *Gilio v. Sch. Bd. of Hillsborough Cnty., Fla.*, 905 F. Supp. 2d 1262, 1269–70 (M.D. Fla. 2012); *Guiles ex rel. Guiles v. Marineau*, 461 F.3d 320, 322, 327 (2d Cir. 2006). Neither is the elephant display associated with any curricular activity. *See Hazelwood*, 484 U.S. at 271.

The mobile elephant is pure student expression, and the School must tolerate it unless the expression "would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *See Tinker*, 393 U.S.

---

[2] The School published on its website the grounds for revoking a student's parking decal. (Doc. 1, ¶ 41.) The grounds do not include politicking. (*See id.*) Failure to abide by school policy is a ground for revocation, but the policy Defendants cite prohibits "permanently posted" political signage. (Doc. 1-2, p. 3.) Tyler's elephant is not permanently posted on school grounds. (*See* Doc. 1, ¶ 21.)

at 509 (cleaned up); *Bannon*, 387 F.3d at 1213. To "justify prohibition of a particular expression" the School "must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 509. Accepting the truth of the verified allegations at this juncture, Tyler will likely succeed in showing the School did not have a reasonable belief his elephant would lead to a substantial disruption of school activities. *See id.* Tyler alleges the elephant did not disrupt students—it remained outside the School, in Tyler's truck. (Doc. 1, ¶¶ 21, 27.) And the School allows other forms of political speech at that location, including bumper stickers. (*Id.* ¶ 46); *see Tinker*, 393 U.S at 510. While the Court is mindful of the School's difficult task of ensuring a safe and orderly place of learning for students, "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Tinker*, 393 U.S. at 508. Tyler has shown a likelihood of success on his First Amendment claim.

Tyler says he will be irreparably injured absent the TRO because he needs to share his message before the election on November 3, 2020—less than two weeks away. (Doc. 3, p. 12.) The elephant identifies Tyler's chosen presidential candidate and encourages others to vote likewise; a message that will become irrelevant after the election. (*See id.*; Doc. 1, ¶ 20.) What may seem to some obnoxious and controversial may appear to others as creative and inspirational. So Tyler has shown irreparable injury absent the TRO. While the School and its administrators have a legitimate interest in maintaining neutrality, avoiding conflict and controversy, and providing a safe space for pedagogy, injury to Defendants is speculative. The School response contending the elephant will be

viewed as the School's expression is unreasonable when the elephant signage is clearly placed in a student's personal car. (*See* Doc. 1-2, p. 3.) That is no more likely than attributing to the School a student's bumper sticker message on the environment or affinity for Gator football. Whatever view an observer of the display might take of its propriety, it is clearly not school sponsored speech that may be limited by the *Hazelwood* and *Bannon* analysis. As to disruption, Tyler says it caused none and "the specter of disruption or the mere theoretical possibility of discord" isn't enough. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1271 (11th Cir. 2004); (Doc. 1, ¶ 27). So Tyler has shown his threatened injury outweighs Defendants'. Last, the TRO serves the public interest because it promotes First Amendment values. *See Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1230 (11th Cir. 2017).

The Court grants the Motion and will not require Tyler to post a bond because of his high probability of success on his claim, the lack of monetary damages against Defendants from the TRO, the School Board's status as a governmental entity, Tyler's status as a high school student, and the Constitutional rights at issue. *See Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999).

### IV.   CONCLUSION

It is **ORDERED AND ADJUDGED:**

1. Plaintiff's Motion for Temporary Restraining Order (Doc. 3) is **GRANTED**.
2. Defendant Todd J. Sparger is **DIRECTED** to return Plaintiff's student parking decal to him.
3. Defendants, and all other persons acting on their behalf, are **ENJOINED**

      from punishing Plaintiff or preventing him from parking in the student parking lot at Spruce Creek High School during school hours because of the "TRUMP" elephant in the bed of his pickup truck.

4. This Temporary Restraining Order shall remain in effect until **3:00 p.m.** on **Friday, November 6, 2020** unless vacated by the Court.

5. Plaintiff is **DIRECTED** to serve this Order on Defendants and file proof of service by **Tuesday, October 27, 2020**.

6. Defendants may move to dissolve this Order on twenty-four-hour notice to Plaintiff. *See* Fed. R. Civ. P. 65(b)(4).

7. A hearing to determine whether to convert this temporary restraining order into a preliminary injunction is set for **Friday, November 6, 2020** at **3:00 p.m.** in Courtroom 4A of the Orlando Courthouse, 401 West Central Boulevard Orlando, Florida 32801. (*See* Doc. 2.) The Court has set aside **two (2) hours** for this hearing. The parties are permitted to file and serve memoranda, affidavits and any other evidentiary materials relevant to their respective positions no later than **Tuesday, November 3, 2020**. The parties are **DIRECTED** to advise the Court by **Tuesday, November 3, 2020** if they seek to present testimony at the hearing and, if so, exchange witness lists and provide a summary of the expected testimony by **Tuesday, November 3, 2020**.

    **DONE AND ORDERED** in Chambers in Orlando, Florida, on October 23, 2020 3:00 PM.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record